May it please the court, I'm Mark Meltrick, my co-counsel is Wayne Dawson. We would like to reserve three minutes for rebuttal and I will try to reserve four minutes for Mr. Dawson. He will be arguing the state law issue that is the subject of this appeal. With respect to due process, the central question before this court is whether the owners were entitled to actual notice before their ownership interests in their cabins, their recreational cabins on the Pilgrim Springs property and their possessory interest in the property were extinguished pursuant to 11 U.S.C. section 363 such that their cabins were taken and sold and their possessory interest terminated and now we are here today with the owners subject to an order by the bankruptcy court to eject them from the property. Let me ask you a question about your due process claim. I'm having some difficulty figuring out why it matters in this sense. Your clients have now litigated the merits of their possession claims and lost. They've had an opportunity to, and we're here to review that, review as you say those state law issues. So what difference does it make whether or not notice was appropriately given them in the bankruptcy proceedings? They've come in and made the possession. The bankruptcy court dealt with it. The district court affirmed it. We're here to review that. So what opportunity to present your case have you been deprived of? I think the critical facts, your honor, is the posture of this case is UNITA filed a motion to enforce an adversary judgment entered against Louis Green Sr. and Nancy Green. The owners could not be subject to that judgment and ejected from the property because they were not parties to that adversary proceeding. But eventually you got to bring another, you got to litigate this claim, correct? You got to say to the bankruptcy judge, whatever's happened up till now, we have a great adverse possession claim. And the bankruptcy judge said, didn't say, no, I'm sorry, collateral estoppel or issue of preclusion or race judicata keeps you out of this case. The bankruptcy judge said, make your claim. And you made your claim. And the bankruptcy judge said, I reject it on the merits for a bunch of reasons. The district court said, I affirm for slightly different reasons. So what opportunity to make your case have you now been deprived of in the aggregate? But once we were to find that there was not appropriate notice, what does it get you? Don't you still have to go try your adverse possession claim? Correct. Under center. And you did try it and you lost it. Actually, what happened in the bankruptcy court, your honor, is in response to the motion to enforce, we filed a motion pursuant to rule 60B4, alleging and demonstrating that the bankruptcy court, when it entered the 363 sale order, due to the lack of due process, did not have personal jurisdiction over the owners. As a result of that. And over the greens. Under the greens. Assume you're right. Assume that you're right, that it didn't have, I'm not sure you are, but assume you're right, that it didn't have jurisdiction over the greens. It nonetheless, because it was the bankruptcy court dealing with the property of the bankruptcy estate, had jurisdiction over the entire property, did it not? That was property of the estate. The real estate was property of the bankruptcy estate. Correct. It was property of the estate. And you're claiming an interest in the property of the bankruptcy estate. You're saying we adversely possessed some of that property that belongs to us, not to the estate. And that's an interest you'd have to litigate out in bankruptcy court, would you not? I think either in bankruptcy court or in state court. But you'd have to go to the bankruptcy court first to get permission to go to state court. Because the property is the property of the estate. The state court can't take it away from the bankruptcy estate. It was property of the estate before it was sold. My point is that sooner or later in this thing, whether you got notice or didn't get notice, you were going to have to go to the bankruptcy court and make your adverse possession claim. And you did. Maybe later than you would have had you gotten notice, but you did. And the bankruptcy court didn't say, I won't hear your claim because I've already ruled. The bankruptcy court didn't say that. So you had your evidence and you lost. So tell me what it is, what remedy that we give you, because of your due process claim, other than the trial that you've already had. I think there was no adversary proceeding. There were no evidentiary hearings. There was no discovery. There was no motion practice on dispositive motions, because what was before the court was a Rule 60b-4 motion and their motion to enforce. What additional evidence would you present at any such hearing than you didn't present in the Rule 60b? In the Rule 60b motion, the only evidence presented, in addition to evidence that was submitted from the prior proceedings to which we were not parties, were short affidavits to establish that our claim was unique compared to the adverse possession claim of the father. But the bankruptcy court rules on a legal basis. It says, because the, I'm forgetting what the name of them were, PSL, was the lessee, the Catholic bishop, there can be no adverse possession claim. The Catholic bishop has a matter of law. During the term of the lease, the lessor need not worry about adverse possession. The lessee has to worry about that. And that's a legal ruling. If he's right, you've had your day in court. If he's not right, we'll say go back and hold a factual hearing. So I'm not sure I buy your due process argument, but I'm just not sure, even if I bought it, what it gets you. In In Re Lololi, the Ninth Circuit Bankruptcy Appellate Panel, citing this court's decision in In Re Golden Plan, explained that Rule 7001, Subsection 2, requires an adversary proceeding to resolve a lien dispute or an interest in property. But the Rule 60B was brought in the adversary proceeding. Correct. And the judge said, okay, you know, I'm going to hear you. You're here. And I reject your claims as a matter of law because there was a lessor in possession of the property during the period in which you claimed to have established adverse possession. And it's undisputed that the Catholic bishop knew that Lewis Green, Sr. and his family were there with the permission of PSL. Those two facts, which are not disputed, lead me to a legal conclusion. If he's right about that legal conclusion, what would you get from the new hearing? The opportunity to conduct discovery and put on evidence. Those are legal matters. Nobody disputes that PSL was the lessor. Correct. If the first restatement rule applies, you lose. That's what the district court said. That's what the bankruptcy court said. If that's right, if we determine that that's right as a matter of law, what do you gain from the new hearing? Well, on a Rule 60B motion, a party does not have any obligation to demonstrate they have a meritorious defense. And under the Ninth Circuit cases, as we read them, if there is a failure of due process, the result is a lack of personal jurisdiction and the order of the judgment is void as to that interest in the property. And so, like the Gonzales court said... Tell me what happens now. You win. I say there's no due process here. You win. What do you do? You don't get the property. Correct. Nobody says you're... You go back for another adversary proceeding. An adversary proceeding, an adverse possession, and the bankruptcy judge says, well, thanks, now that you're back. I made a legal ruling last time. And making the same one. Now that we're sure I have jurisdiction, I'm making exactly the same ruling, and it's a legal matter. We don't need discovery because there was a lessor. So if we buy that, I know I've used a lot of time on this, but I'm having difficulty with it. If we buy that, that your argument that there was no jurisdiction, does it really matter? We know that you don't have a claim. You litigated that. I think it potentially matters, Your Honor, because that issue itself was not fully and fairly represented. It was argued by the parties to some extent in the briefing in the bankruptcy court because we were distinguishing why our claims, the owner's claims, the green's claims, had not been fully and fairly represented and litigated in the original adversary proceeding. What would be the nature of your evidence to undo the legal conclusion that a lessor can't get adverse possession against a lessor? I think that the essential point is that there was no full, fair litigation of these issues in the bankruptcy court. I understand, but what is the nature of the evidence that you were thwarted from or prevented from or would present? If it's a pure legal issue, I agree with the court, it's a pure legal issue. You've briefed it well here. Thank you. You've briefed it well in the district court. You lost, but you briefed it well. As a practical matter, if we agree with that legal conclusion, how have you been deprived of due process? You've gotten an opportunity to make that legal argument to three different courts, and each of which will consider it. If we disagree with those conclusions, then we might well have to remand to the bankruptcy court to have a more fulsome proceeding, but at the first level, that's my problem. You do have to show prejudice, right? Under the cases of the Ninth Circuit, I would say that we don't. Under the Ninth Circuit case law? What about Rawson? Which case here? Henry to Rawson? I'm not familiar with that case on hand. That's pious, as you wrote it. Then I might be wrong. The Ninth Circuit case law? Why don't we... Incentive center? Wholesale? We're going to... Okay. You said you were going to share time with your co-counsel, and he was going to address, I guess, the state law issue that we've been talking about, so maybe we should let him. Thank you, Your Honor. May it please the court. My name is Wayne Dawson, and I will try and address some of the questions that you've been asking. Well, could you start off with the restatement first rule? I think it would be helpful in this context, Your Honor, if I can look at the underlying issues you've been asking for. What do we get if we go back? Well, no, but I think it would be more helpful to me if you'd address, do you think the Alaska Supreme Court applies the restatement first of property? I think it does in certain contexts, Your Honor. And would it in this context? I don't believe so. Tell me why not. Okay. The district court held on the appeal that although Catholic bishops of North America had a ownership interest during the time period, it didn't have possession. What it equated that to was a life estate in which they have no interest or rights. However, the Alaska Supreme Court, nor the legislature of the state of Alaska, has ever held that restriction to apply in a landlord-tenant situation. Have they held to the contrary?  As I read the Alaska decisions, they generally follow the restatement in the absence of contrary legislation. Correct. But under these circumstances, if you take a look at Alaska statute, the former, then applicable 09-10-030, the Alaska Supreme Court in Shilts specifically stated that the predecessor or the owner must have been seized or possessed in the land. Shilts went on to, in overturning the trial court decision who equated seize to possession as, what it said is having record title, Shilts was seized of the land in the title sense of the term. It is not necessary for the title holder to be in physical possession of land for any period of time in order to assert its rights. But in that case, as I understand it, it did not involve a lease. It did not involve a lease, Your Honor. So it was just somebody who had formal title to the land but never actually went and possessed it. If you accept the district's court provision, I think what he may have been trying to equate to is this is a 99-year lease. If you assume that our clients could assume no other rights than the rights of the lessee, which would have been Pearl River Springs Limited, then when they moved on to the property and started building their cabins and their infrastructure and the trails in 1989, then they would have, with that 10-year mark under the statute, been applicable. Right, but that's only if, and as I read the first restatement, it's pretty clear that you can't establish adverse possession against the owner of a property while the property is leased to someone. And there's no doubt here the property was leased to someone. Correct, Your Honor. So if that's the rule, and maybe the Alaska Supreme Court wouldn't adopt that rule, but if that's the rule, then don't you lose? I do not believe that the Alaska Supreme Court would adopt it in this instance. Isn't the Alaska Supreme Court generally looked at the restatement? It generally does look to the restatement, but if you take a look at the decisions that the Alaska Supreme Court has issued in the adverse possession context, what you see is an expansion of the findings that will allow an adverse possessor to gain title. Beyond what the restatement says? I'm sorry? Beyond the restatement rules? Yes, Your Honor. I think if you take a look at Glover v. Glover. Is there a case that exemplifies that point? If you look at Glover v. Glover, one of the findings that the Alaska Supreme Court stated was that... I have it right here, Your Honor. Okay, let's go to it in just a sec. It's somewhat of a convoluted case, and that did involve what the Supreme Court determined as a lease situation. In that case, a gentleman, Mr. Schneider Sr., built a house on another person's property. In return for living in that house, he would provide the owner with meats and game, essentially food. Although the district court in that case did not equate that to a lease, in fact, didn't address it, the Supreme Court interpreted that as a lease situation. The court went on to say, when it expanded how to look at whether or not adverse possessions have been met, it stated that Schneider may hold an unrecorded title to the property in Kotzebue. What page are you on? Of the case, Your Honor? Yeah. I'm looking at the case. I'm trying to follow along. I'm on page 394. I believe it's toward the rear, Your Honor. I do not have the specific case or page number for it. Your point is? That if he or his predecessor repudiated the true owner's interest in the property through a distinct and positive assertion of their own claim of ownership or through a long and unambiguous occupation of the property, then the initial permissive possession became hostile. In that situation, the lessee just quit paying rent, quit providing the land was sold. But the court is extending the ability of an adverse possessor, even in the context of a lease situation. If you accept that... If you can obtain an adverse possession against a lease, that's not enough for you in this case because the lease was terminated by the bankruptcy court, correct? Well, under the terms of the lease, there would have been 60-some years left. But the lease was terminated, so that your... The underlying lease was terminated. The senior greens lost that argument. Well, the senior greens... Are not in front of us. Are not in front of us, and to be perfectly honest, Your Honor, a review of how that case was handled, I don't think it would have fairly represented... But you don't think that the bankruptcy court can terminate the lease? No. The bankruptcy court has the authority to terminate the lease. So to the extent that you obtained a servient interest against the lease, it doesn't do you any good? They would have a property interest in that lease. That property interest would have a value. The owner of the property was paid a $1.8 million, I believe, for the property as a whole when it was terminated. However, our clients, even if they had only assumed title and possession to their property under the terms of the lessee, they would have still had a property interest that would have required actual notice. They weren't given an opportunity to defend that interest, to raise an objection at that time to address those issues. There was no adversary action filed against our clients. We're dealing with the case where the court is enforcing an order against non-parties. I'm still not clear that the Alaska Supreme Court would not follow the restatement here. The case you just went through doesn't seem to confirm that. Glover v. Glover. There's not a case that confirms it, Your Honor, that I'm aware of, and there's not a case that supports it. It hasn't been addressed specifically on point. These are more in the long lines, these 99-year leases. If you were in Texas dealing with a mineral lease, I know I've gone over your Honor substantially. All right. Thank you. I just want to make sure I understand the arguments. That's all. Good morning. Welcome to Anchorage. Thank you. It's nice to be here. My name is Bruce Moore. I'm here for a NUCTUC. I think it's important to recognize that in personam jurisdiction was obtained over the appellants in this case in the adversary action by service of notion of, excuse me, notice and a motion and a proposed order pursuant to bankruptcy rule 7004. And the notice itself is in the record. It's in the bankruptcy adversary proceeding docket at number 40. I just want to point out that the motion asserts that to inform the recipients that the NUCTUC was asserting that the state law statutory period for adverse possession did not commence against the debtor until the bankruptcy court terminated the lease of Pilgrim Springs Limited on December 5th, 2008. So any question as to these folks not getting notice of the claim being asserted against them? Because I understand that what happened here is there's a bankruptcy proceeding that proceeds to judgment. These folks don't get individual notice of that proceeding. That's correct. Properties to be sold pursuant to the judgment. At some point they come in and try to raise a 60B claim. Correct? Well, that's correct. And the bankruptcy judge says let's have an adversary proceeding here. Let's make this part of the previous adversary proceeding and litigate it out. Exactly. And give them notice and give them... So let me ask you as a bankruptcy matter. Let's assume that for some reason a creditor is overlooked of the estate and doesn't get notice and a judgment comes down. That judgment is not binding on that creditor, correct? Correct. If they should have been known. Correct, correct. What then happens? The remedy in the sale cases that the parties have discussed in the briefing varies, but it's flexible. In the Metzger case, the county had a recorded development agreement. It didn't receive notice of the sale motion. And there was a pending state court action in that case. And the county was then allowed by the bankruptcy court to proceed with its assertion of the agreement in the state court action without prejudice from the bankruptcy case. I guess my question is, isn't that what happened here in effect? Didn't the bankruptcy court in effect say, I didn't think you were entitled to notice, but even if you were, even if we erred there, let's hear your claim? And we'll litigate it. And if it's good, we'll deal with it. But if it's not good, we'll reject it. That's certainly the position of Anuktuk. And when we had, Anuktuk had the property for a couple of years. And when these people didn't leave when they were asked to leave, we filed this pleading in the bankruptcy court to commence an action. When you say these people, you mean the Greens. I mean the Greens. Not the parents. The Greens. Actually, no, we served all of them because all of them were still there. And so we filed the action. We served them with notice. The whole intent was to get them into court to litigate these claims because the Stacy and Mary and Louie Jr. were not affirmatively asserting these cases in claims in state court. We already had rulings in the bankruptcy court with regard to Louie Sr. and Mary, excuse me, and Nancy. And so we thought the most efficient way to deal with this is to go to the bankruptcy court, give everybody notice, bring them in, allow them to address these issues, and if we're right, then they have no claim. If we're wrong, then we'll deal with it. They own part of the property. Correct. Let me ask you about the third restatement, which seems to have a less categorical rule here. How does that affect this case? This third restatement? Yes. I don't know that I'm, without my brief in front of me, I don't know that I could address that. What is the question? Neither did the district court, but the third restatement says, well, usually you don't have to make a claim if there's a lease, but on some occasions you might have to. You might be able to obtain adverse possession. And I guess I don't know what the Alaska Supreme Court would do with that. Do you have any sense? Well, my sense is that now that with the revised statute that was revised in 2003. But that doesn't apply to this case, does it? No, it does not apply to this case. But my approach to that, Your Honor, is that it puts the landlord, the property owner, in the position of bringing an action against both its tenant and the adverse possessors. And so that complicates and creates more litigation than just the application of the common law rule, which is to toll the running of the period until the tenancy is terminated. So while I agree that the third restatement is more nuanced, I think the fundamental rule that's in the restatement and in the other treatises we've cited applies. And you can see its application, and it's important in this case, because the younger greens, the appellants, perfected their claim, started their claim, and then their father again became the agent for the tenant. And the affidavit of Stacey Green says, Well, I asked my dad if I should tell PSL, and he said no. So it creates a situation where if the owner is relying on that lessee to protect the interest, and the lessee's agent knows of an adverse claim and doesn't relay it to that tenant, the owner is prejudiced by that. So the bankruptcy court, I think, in this case, found also that the element of hostility couldn't be established because... Because PSL had given permission to the senior greens to be in their property. My difficulty with that was, is there any evidence that PSL had given permission to the junior greens, if you will? No, Your Honor. I think that there is discussion in the correspondence of other family members, maybe an aunt, but it's pretty apparent that our best case is to say, well, they were a family. They came to the property as a family. Louie Jr. and Stacey were minors when they came to the property in 1975 with their father and then mother, and it's... Well, the archdiocese knew more. The archdiocese knew that, because it wrote a letter, that they were building... They were engaging in some construction activities, if I can use the term generally. Well, I don't recall the construction activity, but you're correct that the archdiocese was concerned about the presence of what it... Of the family, if you will. Of squatters, and asked PSL for assurances that they would be, that the issue would be resolved, and then wrote back to PSL and said, well, we are counting on you. We believe that these people are there as your permissive occupants, unless you tell us otherwise. Did I cut you off? No, no, no. So, I think the court's correct in looking at the question of, so what? These people, if there was a failure to give actual or constructive notice to the Greens in 2010, that was remedied in 2013 by the notice and process that we went through to bring them into the action and to give them their day in court, which they had full opportunity. It was more than just a 60B motion. It was an adversary proceeding. The court, they did file affidavits. Had they sought to, had the issue not been so clean, I guess, they could have done discovery in this case. We were not concerned about limiting them with anything. We just wanted to get them into a court so we could resolve these issues. The remedy for a breach of a sale or for a- I'm just curious, what's the status of the property today? The status of the property today? The Greens out? No, they're not. They're still there? They're still there. Because the order was stayed pending appeal? Yes. The bankruptcy court, the order from the bankruptcy court said, you know, you guys get together and figure out a reasonable way to vacate the property, and if you need me, let me know, and I'll do something differently. But then the case was appealed to the district court, and during that time, NUCTUC has asked that it be notified by the Greens when they go out there. NUCTUC has requested the Greens fill out an access permit card just so that it can maintain control over who's out there and who's not. But you haven't sought to enforce the bankruptcy court's order? No, Your Honor, we have not. So everything is still there in the district court? Everything is still there. There has been no harm to them. Like some of these sales order cases where the property gets sold, the court's stuck with dealing with, well, what do I do now? And it's kind of difficult to reverse a transaction or give money back. But in this case, the prudent thing to do was to bring the claimants into care. I get that NUCTUC bought the property. They knew about the cabins. Is that right? Excuse me? When NUCTUC bought the property, they knew about the cabins? Well, technically NUCTUC was formed two months before the asset purchase auction, so it did not know, but I'm not going to tell the court that people hadn't been there and seen evidence of people out there. But I take the point that you're making is that we don't need to undo anything here, that even if they were to be successful, you own the property and they'd have a claim to part of the property. Well, we haven't addressed the question of what kind of an adverse claim. No, I understand. There's no argument here to undo the sale. No. The only question is whether or not they, in effect, have established ownership or some sort of servitude of some small portion of the property by their adverse possession. Certainly, that's correct. Did you have another point you wanted to make? I actually don't, Your Honors. I mean, my client was in a tough position, and it found what it thought was a procedurally appropriate, due process appropriate way to give these people notice to bring them in and to allow everybody to have their day in court, and that's what we've done. Thank you. Thank you. Just very brief, because I'd let you guys go way over. Thank you, Your Honor. Very brief. At oral argument, the bankruptcy court asked, do you consent to me getting to the merits on this basis in this record? Our response was no, that we are here only to argue the due process issue and how our claim was not fully and fairly litigated. The court never converted this to an adversarial proceeding. It was a post-judgment motion. Wasn't the 60B brought in the adversarial proceeding? Right, to demonstrate the lack of personal jurisdiction as a result of the failure of due process. In Lillole, the court held a motion procedure cannot be used as a substitute for a properly initiated adversarial proceeding, which is done by summons and complaint. We would refer the court to that. Finally, just one quick question. The answer about the restatement and why that doesn't help us in this case is Alaska has a statute that is squarely on point. The adverse possession statute stated that any person who is seized or possessed of real property has a right to eject an adverse possessor. So even if property is leased, the record owner always has capacity to eject someone from the property, so there's no reason for tolling. That's all I have, Your Honor. We're going to take a short 10-minute recess.
judges: Fisher, Paez, Hurwitz